FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In the Matter of | : | Case No. 09-45062/JHW |
| Michael J. and Joanne A. Ricchi | : | |
| Debtors | : | |
| Michael J. and Joanne A. Ricchi | : | Adv. No. 11-1144 |
| Plaintiffs | : | |
| v. | | |
| | : | **OPINION** |
| American Home Mortgage Servicing, Inc., et al. | : | |
| Defendants | : | |

```
                                              FILED
                                     JAMES J. WALDRON, CLERK

                                            May 17, 2012

                                     U.S. BANKRUPTCY COURT
                                           CAMDEN, NJ
                                     BY:  s/ Theresa O'Brien, Judicial
                                     Assistant to Chief Judge Wizmur
```

APPEARANCES:   Brian S. Thomas, Esq.
               327 Central Avenue, Suite 103
               Linwood, New Jersey 08221
               Attorney for Michael J. and Joanne A. Ricchi

               Richard A. Carlucci, Esq.
               Griffith & Carlucci
               801 Asbury Avenue, Suite 200
               Ocean City, New Jersey 08226
               Attorney for David Hadtke

               Jonathan Scott Goldman, Esq.
               Blank Rome LLP
               One Logan Square
               130 N. 18th Street
               Philadelphia, PA 19103
               Attorney for American Home Mortgage Servicing, Inc.

In this adversary proceeding, we are asked to prioritize two competing mortgages, and to enter default judgment against a title insurer. We are also

asked to determine the dischargeability of certain claims asserted against the debtors. The facts as presented at trial support the application of equitable subrogation to subrogate the refinancing lender's mortgage to the positions held by the senior mortgagees before their loans were satisfied from the proceeds of the loan. As to the title insurer, because the proceeding does not arise in or under the bankruptcy case, and is not related to the bankruptcy, the court lacks subject matter jurisdiction over the matter. The causes of action against the title insurer will be dismissed without prejudice. On the issue of the dischargeability of certain claims asserted against the debtors, there is no basis presented in this record to bar the discharge of the claims.

**FACTS**

The debtors, Michael J. and Joanne A. Ricchi, reside at 13 Glory Road, Marmora, New Jersey. In 2004, the house was encumbered by two mortgages, the first held by GMAC Mortgage, and the second, a small home equity loan, by Ditech.com. In April 2004, the Ricchis executed a mortgage on the property in favor of Mr. Ricchi's parents, Armand and Emily Ricchi (the "Ricchi mortgage"), in the amount of $20,000.[1]

In September 2004, the debtors purchased a video store business from David Hadtke, Dr. Charles Hadtke, and John N. Davis III (the "Hadtke group")

---

[1] The Ricchi mortgage was recorded on November 10, 2004.

for $275,000. The debtors paid $60,000 at closing, and signed a note for $215,000 in favor of the Hadtke group, which note had an adjustable interest rate of 2% above the prime rate as reported by the Wall Street Journal. As collateral, the debtors gave the Hadtke group a security interest in the store's inventory, and executed a mortgage in favor of the Hadtke group against their residence, which was recorded on September 22, 2004.

In August 2005, the debtors, experiencing financial distress, determined to refinance the first two mortgages on their home, which totaled about $165,000 at that point, and to restructure the Hadtke loan.

On August 31, 2005, the debtors executed a note and mortgage in favor of Ameriquest Mortgage Company for $244,000. The proceeds of the loan were used to pay off the GMAC and Ditech loans, and some of the debtors' credit card debts. The Hadtke mortgage was not dealt with at the closing. The debtors received $26,547.42 at settlement, and forwarded the sum of $23,452.98 to the Hadtke group. The debtors and the Hadtke group had agreed to restructure the loan in exchange for the payment noted. The interest rate was revised to a fixed rate of 6.25%, which resulted in a substantial reduction of the amount of the monthly mortgage payment required to be paid by the debtors on account of the Hadtke mortgage.

In connection with the closing, Ameriquest Mortgage Company obtained title insurance on the property from the New Jersey Title Insurance Company. The title agent was New Vision Title Agency, LLC. The commitment issued by the New Jersey Title Insurance Company, effective August 5, 2005, listed among the exceptions only three mortgages of record, held by GMAC, Ditech and the Ricchis.[2] Neither the commitment letter nor the policy issued by the title insurance company at closing included in the exceptions, or even mentions, the Hadtke mortgage. An invoice from New Vision Title Agency, LLC to Ameriquest indicates a charge for "Srch/Endrs/Overnites" for $425.00, but the record does not reflect whether and when a title search was conducted. In any event, none of the documentation from the New Jersey Title Insurance Company references the Hadtke mortgage. The debtors signed an affidavit of title at closing, drafted and completed by the title agent, which indicated that the only mortgages on the property were those held by GMAC and Ditech.

At trial, Joanne Ricchi testified convincingly that she advised the Ameriquest representative with whom she was dealing, Andrea Gregory, about the junior lien held by the Hadtkes. The extent of knowledge that Ameriquest had about the Hadtke mortgage is not evidenced in this record. No witnesses were produced by Ameriquest. Nor does the record evidence why the title report produced by the title agency did not list the Hadtke mortgage. There is no

---

[2] Prior to the closing, Armand and Emily Ricchi signed an agreement to subordinate their mortgage to the new mortgagee.

4

information in the record about whether that mortgage was improperly recorded, or any other reason why the mortgage did not appear on the title report.³

On February 13, 2009, Ameriquest Mortgage Company assigned its mortgage to Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc. Asset-Backed Pass-Through Certificates, Series 2005-R10 ("Deutsche Bank"). On August 12, 2009, the Hadtke group began foreclosure proceedings against the debtors' home, naming the assignee of Ameriquest as a defendant. American Home Mortgage Servicing, Inc., is the servicer for Deutsche Bank.

On December 30, 2009, the debtors filed a Chapter 13 petition, which listed "Citi/Residential Lending" as the first mortgagee on the property, with a secured claim of $245,000, and the Hadtke group as the second mortgagee, with a mortgage of $160,000. The debtors valued the property at $240,000. The debtors' Chapter 13 plan sought to strip off the mortgage of the Hadtke group, on the ground that there was no value to reach the claim. 11 U.S.C. §

---

³ David Hadtke testified that shortly before the Ameriquest closing, he received a call from someone about the Ricchis' refinance. The person identified herself, but Mr. Hadtke did not make a note of who she was, and did not remember her identity. The call was very brief, and the caller was "vague". Mr. Hadtke testified that he told the caller that he did not want to subordinate the Hadtke mortgage to any other mortgage, whereupon the conversation ended quickly with an indication that he would be receiving documentation. He never received any documentation. Because the identity of the person who called is not known, I cannot attach any significance to the substance of the discussion.

506(a). The Hadtke group objected to the debtors' plan, claiming that it had priority over the Deutche Bank mortgage because the Hadtke mortgage was recorded before the Deutche Bank mortgage, and no subordination agreement had been entered into by the Hadtke group. American Home Mortgage Servicing, Inc. filed a secured proof of claim on behalf of Deutsche Bank in the amount of $253,634.85.

On February 7, 2011, the debtors filed this adversary proceeding to require American Home Mortgage Servicing, Inc. ("AHMS") and the Hadtke group to prove the validity and priority of their liens. Count 2 of the complaint proposed that the Hadtke claim be subordinated to that of Ameriquest. The Hadtke group filed a counterclaim against the debtors for failing to inform New Jersey Title Insurance Company ("NJTIC") of, or to otherwise disclose, the Hadtke mortgage, claiming that their claim was therefore nondischargeable. AHMS also filed a counterclaim against the Ricchis, asserting that the debtors fraudulently failed to disclose the Hadtke mortgage. As well, AHMS filed a crossclaim against the Hadtke group, asserting that the Hadtke group and the debtors conspired to deceive Ameriquest and that the Hadtke mortgage should be subordinated to the Deutsche Bank mortgage. On July 12, 2011, the debtors amended their complaint to include NJTIC as a defendant. The debtors asserted that they were third party beneficiaries of the insurance agreement, that the dispute arose due to the negligence of NJTIC, and that NJTIC should be required to resolve and settle the dispute. AHMS then filed a

crossclaim against NJTIC, asserting that the insurance company had failed to defend in bad faith and had thereby breached its contract, and asking the court to declare that AHMS was entitled to coverage, including the costs of litigation. On April 2, 2012, AHMS filed a request for an entry of default against the title insurance company, and a clerk's entry of default was entered on April 4, 2012. Default was also entered against the title insurance company in favor of the debtors.

## **DISCUSSION**

The issues before the court can be broken down into three topics: (1) the subject matter jurisdiction of the court to entertain the cross claims filed by AHMS and the debtors against NJTIC; (2) the right of Deutsche Bank to be subrogated to the positions originally held by GMAC and Ditech; and (3) the nondischargeability of the claims held by AHMS and the Hadtke group against the debtors.

    1.    <u>Jurisdiction/New Jersey Title Insurance</u>.

Jurisdictional authority of the bankruptcy court extends to matters arising under, arising in, or related to the bankruptcy proceeding. 28 U.S.C. § 1334. <u>See</u> <u>also</u> 28 U.S.C. § 157(a). The bankruptcy court has the statutory authority to enter final orders and judgments in those cases arising under Title

11 (i.e. the bankruptcy petition), or proceedings arising under or arising in Title 11, otherwise known as core proceedings.  In re Ortiz, 665 F.3d 906, 911 (7th Cir. 2011); In re Exide Techs., 544 F.3d 196, 206 (3d Cir. 2008).  A non-exclusive list of proceedings that Congress determined to be "core" is provided in § 157(b)(2).  28 U.S.C. § 157(b)(2).  All matters "related to" the bankruptcy proceeding may be heard by the bankruptcy court, which then has the authority to issue findings of fact and conclusions of law, which are then submitted to the district court for review.  28 U.S.C. § 157(c)(1).

     The AHMS's crossclaim against NJTIC appears to be beyond the jurisdictional authority of the bankruptcy court.  This is not a core claim under § 157(b)(2).  The claim does not arise in or under Title 11.  Therefore, the only way that the court can hear this claim is if it is related to the bankruptcy.  Related proceedings "'need not necessarily be against the debtor or against the debtor's property,' but, rather, need only be such that 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"  In re Exide Techs., 554 F.3d at 206 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).  In other words, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  Pacor, Inc. v. Higgins, 743 F.2d at 994.

Based upon the record presented here, it does not appear that a judgment rendered in favor of AHMS against NJTIC would impact upon the debtors in any way. The direct beneficiary of the policy is AHMS. If NJTIC is directed by a judgment to make a payment to AHMS under the policy, NJTIC would be subrogated to any claim that AHMS might have against the debtors. In New Jersey, an insurer who pays a claim to an insured is subrogated to the rights of the insured against any third party who is liable for the damages caused. See Continental Ins. Co. v. Boraie, 288 N.J.Super. 347, 349, 672 A.2d 274, 275 (Law Div. 1995) ("Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 104 A.2d 288 (1954) established that normally, a carrier paying an insurance loss is entitled to subrogation against the tortfeasor."). See also Muhammad v. Metro. Prop. & Cas. Ins. Co., No. A-2121-08T2, 2010 WL 1657033, *3 (N.J. App. Div. Apr. 26, 2010) ("The right of subrogation is commonly applicable when an insurer indemnifies an insured for a loss caused by a third party. An insurer is properly reimbursed for the initial payment to the insured by the third party that actually caused the loss."). I conclude that the claim of AHMS against NJTIC is not related to the bankruptcy, and must be dismissed, without prejudice to the prosecution of the action in another forum.

As to the third party beneficiary claim of the debtors against NJTIC, I can readily conclude that the matter is "related to" the bankruptcy proceeding, in that the bankruptcy estate would be enhanced by a recovery against NJTIC, and that the bankruptcy court therefore has the authority to issue findings of

9

fact and conclusions of law to the district court in the matter. In light of the common issues of fact, however, it seems more appropriate to allow the causes of action involving the NJTIC, asserted by both AHMS and the debtors, to be prosecuted in the same forum. Accordingly, the debtors' cause of action against NJTIC will be dismissed as well, without prejudice to the prosecution of the action in the same forum as the AHMS claim against NJTIC will be prosecuted.

    2.    Equitable Subrogation.

"Under the doctrine of equitable subrogation, 'a mortgagee who negligently accepts a mortgage without knowledge of intervening encumbrances will subrogate to a first mortgage with priority over the intervening encumbrances to the extent that the proceeds of the new mortgage are used to satisfy the old mortgage.'" Investors Savings Bank v. Keybank Nat'l Ass'n, 424 N.J.Super. 439, 443, 38 A.3d 638, 641 (App. Div. 2012) (quoting Trus Joist Corp. v. Nat'l Union Fire Ins. Co., 190 N.J. Super. 168, 179, 462 A.2d 603, 609 (App. Div. 1983)). The doctrine is applied so that holders of intervening mortgages are not unjustly enriched at the expense of a new mortgagee. Id. at 444, 38 A.3d at 641. To apply equitable subrogation, a court must find that (1) the secondary mortgagee would be unjustly enriched; or (2) the secondary mortgagee acted fraudulently. U.S. Bank Nat'l Ass'n v. Hylton, 403 N.J. Super. 630, 638, 959 A.2d 1239, 1244 (Ch. Div. 2008). Unjust enrichment is

commonly the reason for applying the doctrine of equitable subrogation in the context of a refinancing arrangement. Typically, equitable subrogation would apply when a senior mortgage is refinanced and the proceeds are used to pay outstanding liens, but the new mortgagee is unaware of a junior mortgage. Id. Constructive notice, by way of a recorded mortgage, does not bear upon the application of this doctrine; failure to take constructive notice is only a form of negligence. First Fidelity Bank, Nat'l Ass'n, South v. Travelers Mortg. Servs., Inc., 300 N.J. Super. 559, 565, 693 A.2d 525, 528 (App. Div. 1997) (quoting 29 New Jersey Practice, Law of Mortgages § 147 at 674-76 (Roger A. Cunningham & Saul Tischler) (1975) (citations omitted)). Actual notice of a mortgage, however, has often barred application of the doctrine of equitable subrogation under New Jersey law. Id. at 568, 693 A.2d at 530.

Recently, a New Jersey court questioned the import of actual knowledge under these circumstances. In Investors Savings Bank v. Keybank Nat'l Ass'n, the Appellate Division noted that courts in other jurisdictions, as well as the Restatement, have suggested that equitable subrogation should be applied even in cases where the refinancing mortgage holder had actual knowledge of junior liens. In dictum, the court observed that there was

> no need to decide whether New Jersey should follow the view of the Third Restatement of Property that even actual knowledge of an intervening recorded lien should not defeat the right to equitable subrogation in the absence of a showing that the intervening lienor was prejudiced by the refinancing of the original mortgage. See Restatement (Third) of Prop. Mortgages § 7.6 comment. (e) (1997) ("Under this Restatement ... subrogation can be granted even if the

11

>  payor had actual knowledge of the intervening interest.") A number of other jurisdictions have adopted this view of the doctrine of equitable subrogation. See, e.g., Suntrust Bank v. Riverside Nat'l Bank of Fla., 792 So.2d 1222, 1225–27 (Fla.Dist.Ct.App.2001); Bank of N.Y. v. Nally, 820 N.E.2d 644, 652–54 (Ind.2005); Am. Sterling Bank v. Johnny Mgmt. LV, Inc., 245 P.3d 535, 539 (Nev.2010); Sheppard v. Interbay Funding, LLC, 305 S.W.3d 102, 108 (Tex.App.2009); Bank of Am., N.A. v. Prestance Corp., 160 Wash.2d 560, 160 P.3d 17, 21–19 (2007).

424 N.J.Super. at 444 n.3, 38 A.3d at 642 n.3. Concluding that neither negligence nor gross negligence on the part of the refinancing mortgagee barred application of the doctrine of equitable subrogation, Id. at 446-47, 38 A.3d at 643-44, the court did not reach the issue of whether actual knowledge would bar the application of the doctrine. But the court's references to the Restatement and to the cases in other jurisdictions on this subject suggest strongly its view that subrogation may be granted even if the refinancing mortgagee had actual knowledge of the intervening interest.

The New Jersey case that is often cited for the proposition that actual knowledge of an intervening lien by the party seeking to be subrogated bars the application of the doctrine is Trus Joist Corp. v. Nat'l Union Fire Ins. Co., 190 N.J. Super. 168, 462 A.2d 603 (App. Div. 1983), rev'd on other grounds, 97 N.J. 22, 477 A.2d 817 (1984). However, the case actually held that equitable subrogation may be applied, even where there is actual knowledge, to afford the new lender a priority lien position to the extent that the lender had satisfied senior liens against the property. In Trus Joist, the new lender had actual knowledge that the property to be taken as collateral was the subject of a

pending fraudulent transfer complaint, but the lender proceeded with the refinancing anyway. The complaint was successful in avoiding the transfer of the ownership of the property, and the court avoided the new lender's mortgage as well. Because the lender had actual knowledge of the pending cause of action when it received the mortgage, the court determined that the lender did not have the protection against avoidance afforded by N.J.S.A. 25:2-15 to "'a purchaser for fair consideration without knowledge of the fraud at the time of the purchase.'" Id. at 176, 462 A.2d at 607 (quoting N.J.S.A. 25:2-15). However, the court allowed the new lender to subrogate to the lien positions of the persons whose liens and encumbrances were satisfied in whole or in part from the proceeds of its loan secured by the mortgage because any other result would unjustly enrich the junior creditors. The court reasoned that "[t]he fact that National Union [the new lender] was aware of the challenge to [the owners'] title does not require a different result, particularly since National Union did not participate in the fraudulent conveyance." Id. at 179, 462 A.2d at 609. In the Trus Joist case, the refinancing mortgagee was not precluded by its actual knowledge of a problem with the title to the property from equitably subrogating to the mortgages that were satisfied from its proceeds.[4]

---

[4] On appeal, the invalidation of the National Union mortgage on fraudulent transfer grounds was reversed by the New Jersey Supreme Court. Trus Joist Corp. v. Treetop Assocs., Inc., 97 N.J. 22, 477 A.2d 817 (1984). Because the National Union mortgage was restored in its entirety, the court did not need to reach the issue of equitable subrogation.

Surprisingly, a subsequent Appellate Division case, citing to Trus Joist, addressed the issue of actual knowledge of the intervening encumbrances as a bar to equitable subrogation by stating that "[a] mortgagee who accepts a mortgage whose proceeds are used to pay off an old mortgage is subrogated to the extent of the loan only where the new mortgagee lacks knowledge of other encumbrances." Metrobank for Savings, FSB v. Nat'l Community Bank of NJ, 262 N.J. Super. 133, 143-44, 620 A.2d 433, 438 (App. Div. 1993). The Metrobank case is surprising because it cited Trus Joist for the proposition that where the new mortgagee has actual knowledge of other encumbrances, the new mortgagee may not be subrogated to the position of senior mortgages that were satisfied from its proceeds. In fact, Trus Joist reached the opposite conclusion, i.e., that notwithstanding the new mortgagee's actual knowledge of a pending fraudulent transfer action against the prospective mortgagor, the new mortgagee was permitted to equitably subrogate to the position of the senior mortgages that were satisfied from its proceeds. Subsequent Appellate Division cases have followed Metrobank in similar circumstances. See, e.g., First Union Nat'l Bank v. Nelkin, 354 N.J. Super. 557, 565-66, 808 A.2d 856, 861 (App. Div. 2002); First Fidelity Bank, NA, South v. Travelers Mortgage Servs., Inc., 300 N.J. Super. 559, 568, 693 A.2d 525, 530 (App. Div. 1997). See also Fleisher v. Colon, No. A-2807-10T1, 2012 WL 360282, *5 (N.J. App. Div. Feb. 6, 2012)("the doctrine will not apply when the new mortgagee has actual knowledge of an intervening mortgage").

A comparison of the Trus Joist and Metrobank decisions evidences conflicting approaches to the issue of the impact of actual knowledge on the application of equitable subrogation. We have found no recent New Jersey Supreme Court case addressing the issue. Where New Jersey's highest court has yet to address particular application of state law, the role of the federal court is to "'predict how [the state's highest court] would decide the issue were it confronted with the problem.'" Jaworowski v. Ciasulli, 490 F.3d 331, 333 (3d Cir. 2007) (quoting Packard v. Provident National Bank, 994 F.2d 1039, 1046 (3d Cir. 1993)). The dictum discussed in the latest Appellate Division case addressing this issue, Investors Savings Bank, references the view of the Restatement (Third) of Property that actual knowledge of an intervening recorded lien should not defeat the right to equitable subrogation in the absence of a showing that the intervening liener was prejudiced by the refinancing of the original mortgage. Several state supreme court decisions agreeing with the Restatement are referenced as well. It is within the realm of reasonableness to predict that the New Jersey Supreme Court would opt for a fact sensitive inquiry that focuses on unjust enrichment or prejudice to the junior mortgagee if equitable subrogation is imposed, rather than impose an absolute bar to the application of the doctrine where the new mortgagee had actual knowledge of the junior lien.

"[A]s an equitable doctrine, subrogation is applied only in the exercise of the court's equitable discretion." Metrobank for Sav., FSB v. Nat'l Community

15

Bank of N.J., 262 N.J. Super at 144, 620 A.2d at 439.  Here, there is no question that the Hadtke group would be unjustly enriched by the failure to apply equitable subrogation.  The expectation of the Hadtke group was always to be junior to the first mortgage.  A priority position against the debtors' residence would unexpectedly elevate the Hadtke mortgage to first position, offering the group a windfall in terms of foreclosure opportunity.  As well, if the doctrine is applied, Deutsche Bank would be subrogated to the rights of the senior mortgagees only to the extent that the proceeds of its predecessor were used to pay off the senior mortgages.  The Hadtke mortgage would be situated in exactly the same priority as it would have been if the refinancing had not taken place.

As to the actual knowledge of Deutsche Bank's predecessor, Ameriquest, about the Hadtke mortgage, while I have found as a fact that the Ameriquest representative was told about the existence of the mortgage, the record is unclear about exactly what Ameriquest knew about the mortgage.  What is most striking here is that the Hadtke mortgage does not appear on the title report produced by the title agency at closing.  There is no question that Ameriquest intended to have a first priority mortgage against the debtors' residence.  Cf. 29 New Jersey Practice, Law of Mortgages § 13.9 at 929 (Myron C. Weinstein) (2001) ("If the lender knows of an encumbrance junior to the mortgage . . ., it is presumed that the lender did not intend to acquire a position of priority vis-a-vis the junior encumbrancer, and he is not entitled to

16

be subrogated to the position of the old mortgage holder in order to give him such a position."). One can readily imagine circumstances where a new lender knows of a junior lien but purposely moves forward with the advance of a loan for reasons that might prevent the according of equitable relief. Here, the circumstances appear to be more akin to negligence on the part of the new mortgagee in accepting a mortgage from the debtors without insuring that all junior liens were accounted for. New Jersey cases generally agree that neither negligence nor gross negligence should bar equitable relief to a new mortgagee in similar circumstances. See, e.g., Investor Savings Bank v. Keybank Nat'l Ass'n, 424 N.J. Super. at 446-47, 38 A.3d at 643.

For these reasons, I conclude that Deutsche Bank may be subrogated to the positions of priority initially held by GMAC and Ditech to the extent of the satisfaction of the GMAC and Ditech mortgages from the proceeds of the new loan.

Deutsche Bank contends that subrogation should apply as well to the $23,452.98 forwarded to the Hadtke group by the debtors from the proceeds of the refinancing in September 2005. While a reasonable argument can be advanced that the Hadtke group was enriched by the receipt of the funds, which came from the refinance, the position of the Hadtke mortgage would be prejudiced by the further subrogation of the Deutsche Bank loan. The Hadtke group received the payment from the debtors as a part of a restructuring

agreement to reduce the amount of the interest rate, which resulted in a substantial reduction of the amount of monthly mortgage payment required to be paid by the debtors going forward.  The agreement did not include an increase in the amount of senior mortgages that had priority over the mortgage held by the Hadtkes.  In light of the prejudice to the Hadtke group that would be occasioned if the amounts directly received by them would be added to the amount otherwise subrogated, the quest by Deutsche Bank for this result is rejected.

     3.    <u>Nondischargeability Causes</u>.

As noted in the procedural history, AHMS counterclaimed against the Ricchis, asserting that the debtors had fraudulently failed to disclose the existence of the Hadtke mortgage.[5]  As well, the Hadtke group asserted in its counterclaim that its claim against the debtors should be declared nondischargeable, based on allegations of fraud against the debtors.  Following the trial, both AHMS and the Hadtke group agreed that the grounds for nondischargeability under 11 U.S.C. § 523(a) had not been established, and that the relevant counts of their respective complaints may be dismissed.

---

[5] The AHMS counterclaim did not specifically allege that the claim against the debtors should be declared nondischargeable, but sought compensatory and punitive damages against the debtors.

## **CONCLUSIONS**

The following conclusions have been reached herein:

1. The causes of action against the New Jersey Title Insurance Company, asserted by AHMS and the debtors, shall be dismissed without prejudice to prosecution in an appropriate forum.

2. The mortgage serviced by AHMS shall be equitably subrogated to the mortgages paid off from the proceeds of the loan, including GMAC and Ditech.com, to the extent of the amounts paid to the senior mortgagees.

3. If the debtors successfully complete their Chapter 13 plan and receive a Chapter 13 discharge, or convert their case to a Chapter 7 and receive a Chapter 7 discharge, any unsecured claim due and owing to either AHMS or the Hadtke group may also be discharged.

Debtors' counsel shall submit a form of order in conformance with this opinion.

Dated:  May 17, 2012

JUDITH H. WIZMUR
CHIEF JUDGE
U.S. BANKRUPTCY COURT